John T. Casey, J.
On June 26, 1969, one of the respondents, the Board of Education of Union Free 'School District No. 7, held a special district meeting at which the board resubmitted to the voters a proposed district budget, which had been defeated at two prior meetings. The budget passed by 693 votes: 5,810 votes for the budget and 5,117 votes against the budget.* The petitioners were not allowed to vote at the meeting, and, thereafter, pursuant to section 2037 of the Education Law, they filed a petition with the Commissioner of Education in which they sought to annul the election. The then Acting Commissioner of Education (herein Commissioner) refused to set aside the election. Now, in this article 78 proceeding, the petitioners seek to review the decision of the Commissioner.
Each petitioner raises somewhat different issues; accordingly, this court will consider the claims of each separately. Petitioner Randolph Coffee (herein Mr. Coffee) alleges three grounds upon which the decision of the Commissioner should be set aside: (1) because the board failed to give adequate notice of the meeting; (2) because the board failed to provide a sufficient registration period; (3) because the determination *317 sought to be reviewed could not have been made by an Acting Commissioner of Education.
The first two grounds — lack of notice and an inadequate registration period — require an examination of the Education Law and of the recent decision (June 16, 1969) of the United States Supreme Court in Kramer v. Union Free School Dist. No. 15, (395 U. S. 621). Prior to the Kramer decision, under section 2012 of the Education Law, in order to vote at a school district meeting a party must have been (1) a citizen of the United States, (2) over 21 years of age, (3) a resident of the school district for a period of 30 days next preceding the meeting; and, in addition, he must have either (4) owned [or leased] taxable real property within the district, or (5) been the parent [or have custody] of children enrolled in the local public schools. (Education Law, § 2012.) In Kramer, the United States Supreme Court reversed a decision of a three-Judge District Court, and held that the additional requirements [(4) and (5) above] were unconstitutional because they violated the Equal Protection Clause of the Fourteenth Amendment. The court remanded the case to the District Court for further proceedings, which then entered a judgment providing, imier alia, that the additional requirements of section 2012 were void, and that the remaining voting requirements of section 2012 were to remain in force and would constitute the only valid voting qualifications for school district meeting and election held after June 17, 1969 (a copy of the judgment of the District Court was submitted with the papers in this proceeding).
Mr. Coffee satisfied the citizenship, residence, and age requirements of section 2012. Thus, prior to the decision in Kramer (supra) he was not eligible to vote, but after it, however, he became eligible. Having learned of his enfranchisement, Mr. Coffee appeared on the day of the special meeting and asked to vote. He was allowed to register, but was not allowed to vote on the ground that he failed to register on one of the registration days which were prior to the meeting.
As to his first ground, Mr. Coffee claims the board failed to give him, and others similarly situated, the requisite notice under section 2007 of the Education Law. That section provides in pertinent part (subd. 3, par. a): “ a. * 8 * whenever the voters of the district shall have defeated the budget of the district, in whole or in part * * * and whenever in * * * such case the board of education shall deem it necessary and proper to call a special meeting to take appropriate action, the board of education shall be authorized to give the notices required by subdivision one of section two thousand *318 four of this chapter by publishing such notices once in each week within the two weeks next preceding such special meeting, the first publication to be at least fourteen days before such meeting and any required posting to be fourteen days before the time of such meeting. ’ ’
Significantly, Mr. Coffee does not contend that the usual notice was not given at least 14 days prior to the meeting date, June 26, 1969. Instead, he contends that the notice was insufficient as to him and others similarly situated, because they did not become franchised until June 17, 1969. Thus, according to Mr. Coffee, the special meeting could not have been earlier than July 1, 1969. Stated another way, Mr. Coffee maintains that the 14-day notice provision is to be computed as to each eligible voter and from the date each voter became eligible. Such a rule might well render all special meetings vulnerable. This is so, because in any school district many persons might become eligible voters during the 14-day interim between the date of the first notice and the date of the meeting. For example, a person might obtain 21 years of age during that period; or a person might satisfy the residence requirements during that period. The uncertain foundation of every special meeting, if such parties could question the notice of the meeting on the basis that they were not given 14 days ’ notice from the time they became eligible, is obvious. Thus, the first ground of Mr. Coffee is untenable.
The second argument of Mr. Coffee concerns the registration days set up for the special meeting. Union Free School District No. 7 has adopted the personal registration system of voting. To vote at a special meeting of this district, a party must not only be an eligible voter within the meaning of section 2012 of the Education Law, but his name must appear upon the register of the school district in which he claims to be entitled to vote. (Education Law, § 2014, subd. 2.) As to a special meeting of a union free school district, section 2007 (subd. 3, par. b) provides in pertinent part: “ Notwithstanding the provisions of section, two thousand fourteen of this chapter, where a school district shall have adopted personal registration, the board of registration shall meet on such day or days as shall be fixed by the board of education, the last day of which, however, shall not be more than seven nor less than two days preceding any school district meeting ”.
According to the respondent board, it learned of the decision in Kramer (supra) on June 16, 1969, and, thereafter, scheduled an additional registration day on June 21, 1969 to accommodate the newly enfranchised voters. Mr. Coffee claims that the regis *319 tration notice was inaccurate and the additional registration date was inadequate. He contends the board could have scheduled a registration day on June 24, 1969, and, by so doing, he and others like him would have had more time to register. Although the board could have done so, whether it was required to do so, is another question.
A school board cannot be required to provide a registration date for each eligible voter. Under the statute the final registration date may not be less than two days preceding the special meeting. (Education Law, § 2007, subd. 3, par. b.) Furthermore, the last registration day may be as many as seven days prior to the day of the special meeting. (Education Law, § 2007, subd. 3, par. b.) Thus, as was noted concerning the provision governing the notice of a special meeting, a person, for various reasons, might have become an eligible voter during the interim between the last registration day and the day of the special meeting. Consequently, there might not have been a registration day available to such a person. To allow him to question an election on such grounds might well raise a substantial question as to the finality of any special election. This court, therefore, holds that the respondent board was not under a duty to provide an additional registration day for Mr. Coffee and others similarly situated.
Furthermore, even if the board were required to provide an additional registration date, on the basis of the record presented this court cannot say that the Commissioner was arbitrary in deciding that notwithstanding the error contained in one of the published notices, the board provided an adequate registration period for Mr. Coffee and others similarly situated.
The court is aware of section 2010 of the Education Law which provides: ‘ ‘ The proceedings of no district meeting, annual or special, shall be held illegal for want of due notice to all the persons qualified to vote thereat, unless it shall appear that the omission to give such notice was wilful and fraudulent.”
The Commissioner found there was no showing of any willful and fraudulent intent on the part of the board and thus concluded that, even if there were not due notice, the special meeting was not illegal. Again, this court cannot say that the conclusion was arbitrary.
As to the third argument of Mr. Coffee, suffice it to say, that the then Acting Commissioner of Education was authorized to render a decision in this matter. (Education Law, § 101; Matter of Anderson v. Allen, 282 App. Div. 993, mot. for lv. to app. den. 283 App. Div. 748, mot. for lv. to app. den. 306 N. Y. 985.)
*320 One additional point needs mention concerning the merits of the petition of Mr. Coffee. He claims at least 481 persons who were enfranchised by Kramer (supra) were not allowed to vote at the special meeting. He also claims that it is impossible to ascertain how many others within the district were similarly situated. As has already been pointed out, the budget passed by 693 votes out of a total of 10,927 votes. In light of such a voting pattern, a substantial number of denied voters in excess of 693 must be shown before this court could conclude there existed a probability that the results of the election would be affected by the irregularities complained of. (See Boyes v. Allen, 32 A D 2d 990; but see Berard v. Nyquist, 60 Misc 2d 924.) The burden of establishing such facts rests with the petitioner (e.g., Matter of District No. 8, Town of Chemung, 69 N. Y. St. Dept. Rep. 85). Thus, even assuming Mr. Coffee and others similarly situated should have been allowed to vote, on the basis of the record presented, the action of the Commissioner in refusing to set aside the election cannot be characterized as arbitrary.
The other petitioner, Richard Davis, in addition to the arguments advanced by Mr. Coffee, contends that the Supreme Court of the United States by its decision in Kramer (395 U. S. 621, supra) declared all of section 2012 of the Education Law unconstitutional. As has been demonstrated in .the discussion of the points raised by Mr. Coffee, such is not the case. The Kramer decision, and the subsequent judgment of the District Court, clearly spell out that only the ‘ ‘ additional ’ ’ requirements of section 2012 were unconstitutional, and that the citizenship, age, and residence requirements of section 2012 survived. Thus, petitioner Davis’ argument fails.
Accordingly, the petition is dismissed (e.g., Berard v. Nyquist, 60 Misc 2d 924, supra; Matter of Davey v. Nyquist, 60 Misc 2d 226).

 Although the proposed budget had been defeated at two prior meetings, the board could resubmit the proposal. Such action rests within the discretion of the board, but is subject to judicial review. (Matter of Galloway v. Saletan, 20 A D 2d 796.) In the present proceeding, 'however, whether the discretion was abused is not at issue.